# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Tess Herman,

    Plaintiff,

v.

Ohio University, *et al.*,

    Defendants.

Case No. 2:19-cv-201
JUDGE SARAH D. MORRISON
Magistrate Judge Vascura

## OPINION & ORDER

In this Title IX sexual misconduct case, Defendant Ohio University has filed a Motion to Dismiss each of Plaintiff Tess Herman's six claims against it under Fed. R. Civ. P. 12(b)(6). (ECF No. 17.) A response and reply have been filed.

### I. ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

In adjudicating this Motion to Dismiss, the Court accepts as true all well-pleaded factual allegations from the First Amended Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-9 (2009).

Ohio University ("University") is a public educational institution receiving federal funding. At all relevant times, Defendant Dr. Yusuf Kalyango ("Kalyango") is or was the University's Director of the International Institute of Journalism ("IIJ"). In that role, Dr. Kalyango runs the Young African Leaders Initiative ("YALI") and the Study of the United States Institute ("SUSI"). (First Am. Cmplt. ¶ 121.) At all pertinent times, Ms. Herman ("Herman") is or was a graduate student at the University working towards her Master of Science in Journalism and her Master of Science of Environmental Studies.

1

Herman and Kalyango first met on February 5, 2017 at a party. The next day, Kalyango sent Herman an e-mail asking her to meet to "celebrate post-Super Bowl (win) with a coffee treat or dinner in town" and indicating he had her phone number. (ECF No. 15 ¶ 11.) Herman accepted because of Kalyango's role in YALI and SUSI. *Id.* ¶ 12. After that meeting, Kalyango frequently asked Herman to movies, shopping and dinner. He often sent her text messages late at night telling her she was beautiful. Even though Herman asked Kalyango to stop texting her between 9 p.m. and 9 a.m., he continued to do so. Kalyango contacted Herman via e-mail as well, sending her one message with a "winking emoji" and another ending with "sweet dreams." *Id.* ¶¶ 22-23.

In mid-March 2017, Kalyango and Herman had dinner together. During that dinner, Kalyango offered Herman a job working for him as a Program Assistant and Administrative Coordinator for YALI. He did so without first having Herman undergo an interview. She accepted.

In that role, she was to accompany him on a YALI trip to South Africa. In late March 2017, Kalyango forwarded Herman flight information. Herman responded "Flight looks good to me! Extra work in SA woo!" *Id.* ¶ 27. Kalyango replied "[b]ut its [sic] not South Africa. It's actually Rwanda. I want to show you something. I'm thinking of something outside of the work. Work is only in South Africa. It's for you . . . sort of . . . yes, something you're interested in." *Id.* Kalyango was co-director of YALI at that time.

The next month, Kalyango e-mailed Herman offering to drive her to Connecticut to see her parents. The trip would total twenty hours in the car.

On May 28, 2017, shortly before the South Africa trip, Kalyango told Herman their hotel in Lake Kivu, Rwanda had only one room such that he and she would have to room together. He

2

told her this was the only option. Herman then contacted University philosophy Professor Dr. Jeremy Morris, and told him about Kalyango's attempts to have her share a hotel room with Kalyango during the trip. Morris told Herman that Kalyango's actions in this regard were "not okay." *Id*. ¶¶ 79-80. Morris did not report Herman's allegations about Kalyango to anyone at the University.

Herman went forward with the trip and, when they arrived in South Africa, Kalyango paid for Herman's expenses, including an expensive gorilla trekking trip for the two of them. On June 10, 2017 Kalyango bought Herman several alcoholic drinks while they were at the Cabana Havana Club and the Blue Room in South Africa. *Id*. ¶ 38. At the Blue Room, Kalyango grabbed Herman's hands and tried to get her to dance with him. In so doing, he hurt her shoulder.

Then, upon arrival in Rwanda, Kalyango again stated that they had to share the room as it was the only option. Herman declined because it would be inappropriate for a professor and a student to share a hotel room. Kalyango then said Rwanda was an excursion, not part of the University's YALI trip to South Africa. Kalyango declared that he would have to miss certain events if Herman did not stay with him, and expressed concern about Herman's safety were she to stay in a room by herself. Herman again declined. Instead, she stayed at another hotel, at her own expense. While in Rwanda, Kalyango sent Herman a text message stating "Sad . . . I'm sad." *Id*. ¶ 37.

After those incidents, and while the trip was still proceeding in Africa, Herman approached University Professor Judy Millesen, YALI's co-director and supervisor for the trip. Herman informed Millesen about Kalyango's conduct, including the texts and e-mails. In response, Millesen told Herman that enduring Kalyango's misconduct was part of Herman's job, that she had learned to go along with what Kalyango wanted and that Herman should act

3

likewise if Herman wanted to keep her job. Millesen did not report Herman's allegations against Kalyango to the University.

Upon their return from South Africa, Herman made three attempts to personally meet with Kalyango to discuss expense reports for the trip. Completing such reports was part of her job. Each time, Kalyango failed to appear. Herman then went to the University's Human Resources Department, which advised her to e-mail Kalyango detailing her work during the trip and her attempts to meet with him to complete the reports. She did so. Kalyango's July 5, 2017 reply terminated her from YALI. *Id*. ¶ 69. Based upon advice from Human Resources, Herman responded to defend her job performance, and Kalyango responded by apologizing and stating that he had learned from the experience.

University journalism Professor Mary Rogus, a friend of Kalyango, approached Herman and asked her not to report Kalyango to the University's Office of Equity and Civil Rights Compliance ("ECRC"). Herman did not heed Rogus' suggestion and instead lodged a formal complaint with the ECRC on July 6, 2017.

Herman's complaint to the ECRC led to an investigation and an August 24, 2018 Memorandum of Findings ("Memorandum"). The Memorandum concluded that Herman's allegations against Kalyango for quid pro quo sexual harassment and hostile work environment were substantiated. (ECF No. 15 Ex. A.)[1] The Memorandum was then submitted to the

---

[1] As a general rule, the Court may not consider matters beyond the complaint when deciding a motion to dismiss. If the Court does so, the motion to dismiss is converted to a motion for summary judgment after proper notice. *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed. 2000)). Exceptions to the general rule apply when the document outside the complaint is attached to the pleadings or is a public document. *Commercial Money Center, Inc. v. Illinois Union Ins. Co*. 508 F. 3d 327, 336 (6th Cir. 2007); *Wyser-Pratte Mgmt. Co. Inc. v. Telxon Corp*., 413 F.3d 553, 560 (6th Cir. 2005) (citing *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001)). In those instances, the Court may properly consider the document without conversion. Because

University's Chair of the Journalism Department and the Dean of the College of Communication "for consideration of possible disciplinary action . . . ." *Id*. ¶ 35. The Memorandum suggested that if Kalyango remained in his position, he should receive additional training in the areas of sexual misconduct and workplace behavior. *Id*.

The First Amended Complaint alleges it is "common knowledge" among both faculty and staff within the University's journalism department and within the IIJ that Kalyango favors women to whom he is sexually attracted. Kalyango retaliates against those that rebuff his advances in ways that affect their education and careers. University journalism graduate students warn incoming graduate students about Kalyango's "proclivity to make sexual advances towards students." *Id*. ¶ 107. In addition, the First Amended Complaint details Kalyango is or was the subject of three other University investigations for sexual harassment. *Id*. ¶ 119.

Herman's First Amended Complaint asserts a total of eighteen counts. Six of those are against the University. Those include claims under 20 U.S.C. § 1681 ("Title IX") for: (1) *quid pro quo* sexual harassment; (2) sexual harassment; (3) hostile work environment; (4) gender-based disparate impact; (5) discrimination, and (6) retaliation. The genesis of these claims is that the University's "deliberate indifference" to Kalyango's improper behavior allowed him to create and maintain a hostile environment and to sexually harass Herman during the Spring and Summer of 2017. The University moves to dismiss each, and the Court will now discuss each ground of support in turn.

---

the Memorandum is a public document attached to the First Amended Complaint, the Court may consider it when addressing the instant motion to dismiss without converting it to a motion for summary judgment.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft*, 556 U.S. at 678).

## III. ANALYSIS

The Court first examines Counts One, Two, Three and Five, which assert claims for *quid pro quo* sexual harassment, sexual harassment, hostile work environment and discrimination. The Court's discussion of Count Four, involving gender-based disparate impact, and of Count Six, for retaliation, follow.

### A. Sex Harassment, Hostile Work Environment and Sex Discrimination

Within Counts One, Two, Three and Five, Herman utilizes Title IX to claim that the University was deliberately indifferent to the substantial risk that Kalyango would create and maintain a hostile environment while sexually harassing and discriminating against her during

6

the Spring and Summer of 2017 for her YALI duties. The University argues dismissal of each count is proper because it lacked actual notice of Kalyango's improper actions. After due deliberation, the Court determines that Herman's allegations are sufficient at this juncture.

Title IX provides: "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[2] 20 U.S.C. § 1681(a). The University admits it receives federal funding. Because the University is an institution voluntarily participating in federal spending programs, it has waived its Eleventh Amendment immunity for Title IX purposes pursuant to 42 U.S.C. § 2000d-7. *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1065 (S.D. Ohio 2017).

An implied private cause of action exists under the statute. *Cannon v. University of Chicago*, 441 U.S. 677, 717 (1979). "[T]he 'discrimination' prohibition of Title IX encompasses the sexual harassment of a student by a teacher." *Franklin*, 503 U.S. at 75; *see also Williams*, 400 F.3d at 366. In order to survive the present motion to dismiss, Herman must provide a sufficient factual predicate for her teacher-on-student sexual harassment claim. This includes alleging that: (1) she was subject to *quid pro quo* sexual harassment or a sexually hostile environment so severe and pervasive that it deprived her of educational opportunities or benefits; (2) she provided actual notice of the harassment to an "appropriate person," who was, at a minimum, an official of the University with authority to take corrective action and to end discrimination; and

---

[2] In essence, each of Herman's claims against the University, with the exception of her disparate impact count and her retaliation count which are both addressed *infra*, are for sex discrimination. Under Title IX, sex discrimination encompasses sexual harassment. *Williams v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005) (citing *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 282 (1998) (citing *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 74-75, (1992)). Thus, no separate discussion of those claims is necessary.

(3) the University's response to the harassment amounted to "deliberate indifference." *See Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 995 (S.D. Ohio 2018) (quoting *Evans v. Bd. of Educ. Sw. City Sch. Dist.*, No. 2:08-CV-794, 2010 U.S. Dist. LEXIS 72926, 2010 WL 2889100, at *7 (S.D. Ohio July 20, 2010)), (citing *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001)); *see also Vance*, 231 F.3d at 258-59.

Here, the University focuses its argument on the last two prongs because it can be held liable in monetary damages for Kalyango's misconduct only if it had actual notice of his actions and responded to them with deliberate indifference. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642 (1999); *Gebser*, 524 U.S. at 290; *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000). The Court will address the notice aspect before turning to the deliberate indifference facet.

### 1. Actual Notice

To state a claim against the University, Herman must first allege that the University had actual knowledge of Kalyango's sexual misconduct. *See Adams*, 300 F. Supp. 3d at 995. "'Actual knowledge requires only that a single school administrator with authority to take corrective action had actual knowledge of the sexual harassment.'" *Id.* (quoting *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 848 (6th Cir. 2016)). Actual knowledge may involve current or past abuse. *Id.* (citing *Williams v. Paint Valley Local Sch. Dist.*, No. C2-01-004, 2003 U.S. Dist. LEXIS 13397, 2003 WL 21799947, at *2 (S.D. Ohio July 16, 2003), aff'd sub nom. *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360 (6th Cir. 2005)); *see also Hart v. Paint Valley Local Sch. Dist.*, No. C2-01-004, 2002 U.S. Dist. LEXIS 25720, at *22 (S.D. Ohio Nov. 15, 2002). The actual notice standard is satisfied "'when an appropriate official has actual

knowledge of a substantial risk of abuse . . . based on prior complaints of other students.'" *Adams*, 300 F. Supp. 3d at 996 (quoting *Williams*, 2003 U.S. Dist. LEXIS 13397, *5).

Herman's First Amended Complaint alleges that the University had actual notice of Kalyango's sexual misconduct prior to her ECRC complaint. Specifically, she asserts that there have been at least three ECRC investigations into Kalyango's sexual harassment of female journalism students. Natalie Brown was one of those complainants who alleged having experienced sexual discrimination by Kalyango prior to Herman's encounters with him. (ECF No. 15 ¶ 93.) Generally, Herman alleges Kalyango's sexual harassment of female journalism students was "common knowledge" among journalism faculty and students.

Construing these facts in a light most favorable to Herman "yields a pattern of [Kalyango] preying on young women" in the journalism department. *Adams*, 300 F. Supp. 3d at 996. Whether allegations of previous sexual misconduct coupled with claims of general knowledge are sufficient to satisfy the actual notice requirement "does not lend itself well to a determination by the Court" at the motion to dismiss stage. *Id.* 997 (citation omitted). Accordingly, the University has failed to prove as a matter of law that those prior incidents could not constitute actual notice under *Adams* and *Williams*.

The University attempts to prevent that result by responding that the "actual knowledge" definition set forth in *Williams* and repeated in *Adams*, upon which Herman relies, is simply incorrect. *Williams* involved allegations of a teacher sexually abusing a young student. *Williams*, 2003 U.S. Dist. LEXIS 13397. The child's mother sued, asserting the school district had been deliberately indifferent to five similar previous complaints about the teacher such that each student was at substantial risk of similar harm. The school district moved for summary judgment,

arguing that the previous allegations were insufficient to establish notice of a substantial risk of similar harm to current students.

When denying judgment in the school district's favor, the *Williams* court held an appropriate official is not required to have actual knowledge of current abuse. Rather, *Williams* held:

> [T]he actual notice standard is met when an appropriate official has actual knowledge of a substantial risk of abuse to children in the school based on prior complaints of other students. While the complaints may be unsubstantiated by corroborating evidence and denied by the allegedly offending teacher, whether such complaints put the school district on notice of a substantial risk to students posed by a teacher is usually question for the jury.

*Williams,* 2003 U.S. Dist. LEXIS 13397, at *5 (quoting *Hart*, 2002 U.S. Dist. LEXIS 25720, at *22). *Williams* proceeded to trial that yielded a defense verdict. After the plaintiffs' motion for a new trial was unsuccessful, they appealed, largely on the propriety of jury instructions. The Sixth Circuit affirmed. *Williams ex rel Hart*, 400 F.3d 360.

Like *Hart and Williams, Adams* involved Title IX teacher-on-student sexual harassment allegations. Ohio University, one of the defendants therein, moved to dismiss, arguing that the plaintiffs' contention that other faculty and students had previously complained of sexual harassment against the same professor was insufficient to show notice. The *Adams* court found that argument unpersuasive under *Hart*, 2002 U.S. Dist. LEXIS 25720. Specifically, *Adams* held:

> Applying the *Hart* principles to the facts here, the Court finds that the previous incidents of harassment Plaintiffs point to for notice are not insufficient as a matter of law. The *Hart* court made clear that previous acts of abuse against victims other than the plaintiff can be considered in determining whether the actual notice standard is met to impose Title IX liability. Thus, Defendants' argument that there is no standing is without merit. Similarly, the *Hart* court relied on incidents that occurred nearly 20 years prior to the harassment against the plaintiff, so the argument that the claims are time barred or too remote in time must fail. So too must the

> argument that Plaintiffs cannot rely on unsubstantiated events as a matter of law—the *Hart* court held that whether such unsubstantiated events could be considered sufficient notice is a question usually for the jury. Thus, the Court will not give credence to Defendants' arguments that the alleged notice in this case is insufficient as a matter of law.

*Adams*, 300 F.Supp. 3d at 999. Hence, *Hart* and *Adams* establish that previous allegations of sexual misconduct, whether substantiated or not, may be considered when addressing the actual notice component of a Title IX sexual discrimination claim.

The University urges the Court to ignore this line of cases because the United States District Court for the Western District of Michigan reached a different result. In particular, the University cites to *King v. Curtis*, No. 1:14-cv-403, 2016 U.S. Dist. LEXIS 184737 (W.D. Mich. Nov. 1, 2016), adopted over objections on March 1, 2017 in 1:14-cv-403, wherein the court granted defendants' summary judgment motion on a Title IX teacher-on-student sexual harassment count. While so deciding, the *King* court openly disagreed with the *Williams ex rel Hart's* court's inclusion of the "substantial risk" language within the actual knowledge analysis, choosing instead to adopt a definition of actual knowledge lacking that phrase. *King*, 2016 U.S. Dist. LEXIS 184737, *9-17.

The *King* court considered a motion for summary judgment, but a motion to dismiss is at issue in the case *sub judice*; therefore, two different standards of review are involved. Moreover, *King* simply disagreed with the *Williams ex rel Hart's* panel's reasoning. But, a district court's mere difference of opinion with the Sixth Circuit's reasoning, without more, is insufficient to warrant a departure from substantially similar cases from within this Circuit and District. Accordingly, the Court follows *Hart, Williams, Williams ex rel Hart* and *Adams* due to the significant similarities among those matters and this case to hold that actual knowledge does include a substantial risk competent that may be satisfied by past allegations of sexual

misconduct, whether substantiated or not. Thus, dismissal is not warranted because Herman sufficiently alleges actual knowledge in her First Amended Complaint.

The University next contends that its motion to dismiss should be granted because Herman failed to report her claims to an appropriate official. (ECF No. 17 at 7-9.) As noted, according to the First Amended Complaint, Herman reported the allegations to Professor Norris before the trip and to journalism Professor Millesen during the South Africa trip. After the trip, journalism Professor Mary Rogus asked Herman not to report Kalyango's behavior. Despite the fact that three University professors knew of Kalyango's alleged harassing behavior, the University argues that those professors were mere "faculty" and not "appropriate University officials." (ECF No. 17 at 8.)

Herman asserts that the University had provided no training to faculty, staff, or students on how or where to report sexual harassment. Herman also alleges that Professor Millesen was the co-director of the YALI program with Kalyango. Furthermore, Herman alleges Morris and Millesen were mandatory reporters. (ECF No. 15 ¶ ¶ 48, 80.) Under these circumstances, the Court finds that the University's "appropriate official" argument is insufficient to warrant dismissal at this early stage.

### 2. Deliberate Indifference

The second and final prong at issue involves deliberate indifference. The University argues that because its response to Herman's complaints about Kalyango was not deliberately indifferent, dismissal is appropriate. Herman counters that the University's post-reporting response, in addition to the University's reaction to previous complaints against Kalyango, do amount to deliberate indifference.

Deliberate indifference arises when "school officials are aware of the misconduct but do nothing to stop it, despite [the University's] ability to exercise control over the situation." *Horner v. Ky. High Sch. Athletic Assn.*, 206 F.3d 685, 692 (6th Cir. 2000). In other words, the University's "deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Vance*, 231 F.3d at 260 (quoting *Davis*, 526 U.S. at 645). To be actionable under Title IX, the University's response to the harassment must be clearly unreasonable in light of the known circumstances. *Davis*, 526 U.S. at 648.

In support of its motion, the University contends Herman does not allege any prior sexual harassment allegations made against Kalyango. The University characterizes Herman's claims as "playing favorites or flirtations between adults," and argues Herman's conversations with Professors Morris and Millesen about Kalyango's misconduct failed to "suggest [Herman] was subjected to a sexually hostile environment" such that Herman "was deprived … of access to the educational opportunities and benefits of the University." (ECF No. 17 at 12-13; ECF No. 45 at 8.) The University notes that once Herman contacted the ECRC, "an investigation was opened immediately" and she made no further claims of harassment by Kalyango. (ECF No. 17 at 14.)

Initially, the Court notes that the University is mistaken as to the contents of Herman's First Amended Complaint. That pleading sets forth numerous alleged incidents of such prior allegations. (ECF No. 15 at second full paragraph, ¶¶ 39, 75, 87, 93, 94, 103, 107, 119, 128, 204.) Thus, Herman responds that the University's deliberate indifference to prior complaints against Kalyango permitted Kalyango to both sexually harass her and to deprive her of educational opportunities at the University. (ECF No. 36 at 9.) Specifically, Herman argues the University's: (1) "ignoring the common knowledge circulating within its Journalism department" about Kalyango's sexual misconduct, (2) allowing Kalyango to bypass traditional hiring

13

processes for YALI and SUSI, and (3) failing to supervise Kalyango resulted in her suffering sexual harassment that was so severe that she had to avoid the journalism building where Kalyango's office was, she quit the journalism master's program, and considered leaving the University in the middle of her graduate studies. *Id*. 11.

Hence, the University's post-reporting actions are not in primary focus here. As *Hart* explains:

> Defendants focus on the remedial action that they took in response to [Plaintiffs'] complaint[s], indicating that they responded meaningfully to the allegations. Plaintiffs' claim, however, does not involve allegations concerning the [University's] conduct *after* the alleged abuse. Plaintiffs complain that, had the [University] acted appropriately *before* the alleged abuse, [they] would not have been subjected to misconduct.

*Adams*, 300 F. Supp. 3d at 999 (emphasis added and internal quotation marks omitted) (quoting *Hart*, 2002 U.S. Dist. LEXIS 25720, at *26.) The University does not address the reasonableness of its actions with respect to prior sexual harassment allegations against Kalyango due to the University's limited reading of the First Amended Complaint.

This case personifies why the deliberate indifference standard "'does not lend itself well to a determination'" at the motion to dismiss stage. *Adams*, 300 F. Supp. 3d at 1000 (quoting *Hart*, 2002 U.S. Dist. LEXIS 25720, at *26). Indeed, in the motion to dismiss context "[p]laintiffs have not been given an opportunity to conduct full discovery into how the University responded to each instance of previous misconduct." *Adams*, 300 F. Supp. 3d at 1000. And, at this point, Herman need only allege specific facts necessary to state her claim and the grounds showing entitlement to relief. *Twombly*, 550 U.S. at 570; *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018).

She has done so here. She alleges that appropriate University officials had actual knowledge that Kalyango posed a substantial risk of sexually harassing female journalism students based upon prior complaints and that the University's deliberate indifference to Kalyango's sexual misconduct resulted in her being sexually discriminated against by him. Accordingly, the Court holds that the First Amended Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" as to her Title IX sexual discrimination claims. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The University's Motion to Dismiss Counts One, Two, Three and Five is **DENIED**.

### B. Title IX Disparate Impact Claim

The University asserts that no legally-recognizable claim for Title IX disparate impact exists. (ECF No. 17 at 6 n.2.) In response, Herman cites to no section of Title IX. Instead, she repeats her allegations that male graduate students under Kalyango's purview were not subjected to his advances. (ECF No. 36 at 9-10.) This is insufficient. "Although Title IX prohibits intentional gender discrimination, it does not support claims of disparate impact." *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1065 (S.D. Ohio 2017) (citation omitted); *see also Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 608 (S.D. Ohio 2016). Consequently, the Court **GRANTS** the University's Motion to Dismiss Herman's Title IX disparate impact "claim."

### C. Title IX Retaliation Claim

Herman's final count at issue is for Title IX retaliation. The University asserts that this claim is merely duplicative of Herman's sexual discrimination count and that she fails to sufficiently allege the basic retaliation elements. (ECF No. 17 at 16.) Herman opposes by asserting the requisite elements are sufficiently pleaded. (ECF No. 36 at 17-20).

Title IX protects individuals who "complain of sex discrimination" from retaliation. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005). "Retaliation is, by definition, an intentional act. It is a form of 'discrimination' because the complainant is being subjected to differential treatment." *Id*. 173-74. Title IX retaliation claims are analyzed pursuant to the same legal framework as Title VII retaliation claims. *Fuhr,* 710 F.3d at 673.

Herman can utilize direct or indirect evidence to establish her retaliation count. Herman asserts that she alleges the existence of direct evidence to support her retaliation claim so that she can bypass the *McDonnell Douglas* elements. (ECF No. 36 at 17.) The "direct evidence proof model . . . is an evidentiary standard, and therefore, is not a pleading requirement." *Witte v. Rippe & Kingston Sys*., 358 F. Supp. 2d 658, 664 n.5 (S.D. Ohio 2005).

Regardless, she does not allege the existence of direct proof as to her retaliation claim. Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006) (quotation omitted). Direct evidence "requires the conclusion that unlawful retaliation was a motivating factor in the employer's action." *Abbott v. Crown Motor Co*., 348 F.3d 537, 542 (6th Cir. 2003). The First Amended Complaint asserts that Kalyango's actions after she reported him to the ECRC caused her to suffer five adverse educational or employment actions. Initially, Herman claims that Kalyango had an increasingly hostile and passive aggressive attitude toward her after the Africa trip. Secondly, she alleges that he refused to meet with her after the trip to complete the expense reports. Third, she asserts that Kalyango falsely accused her of altering her performance evaluations. Fourth, she alleges that Kalyango falsified her evaluations to portray her in a negative light. Fifth, and finally, she says that Kalyango fired her from YALI. Because

each of these allegations require an inference that retaliation was a motiving factor in Kalyango's actions, Herman pleads circumstantial, or indirect, evidence of retaliation.[3]

Accordingly, Herman must allege that (1) she engaged in protected activity, (2) [the University] knew of the protected activity, (3) she suffered an adverse school-related action subsequent to or contemporaneous with the protected activity; and (4) a causal connection existed between the protected activity and the adverse action. *Thomas*, 1 F. Supp. 3d at 827 (listing elements for Title IX retaliation in context of motion to dismiss); *see also Dibbern v. Univ. of Mich.*, No. 12-15632, 2013 U.S. Dist. LEXIS 163538, at *24 (E.D. Mich. Nov. 18, 2013) (same); *see also Jones v. Econ. Opportunity Planning Ass'n of Greater Toledo*, No. 3:11 CV 2084, 2013 U.S. Dist. LEXIS 15511, at *27 (N.D. Ohio Feb. 5, 2013) (applying *McDonnell Douglas* to indirect proof case); *see also Gordon v. Traverse City Area Pub. Sch.*, 686 Fed. Appx. 315, 320 (6th Cir. 2017) (internal citation omitted) (addressing motion for summary judgment on Title IX retaliation claims).

Here, the University concedes that the First Amended Complaint sufficiently alleges the first requirement. (ECF No. 45 at 11.) The University chooses not to address the adverse action and causal connection elements. Instead, the University focuses on the knowledge aspect. In particular, the University argues Herman fails to assert Kalyango knew about Herman's reports to Millesen and to the University's Human Resources department. (ECF No. 45 at 11-12.) While it is true that the First Amended Complaint does not specifically allege that Kalyango had such knowledge, discovery may reveal that Millesen and/or a Human Resources representative told Kalyango about Herman's allegations. In addition, complaints are to be construed so as to do

---

[3] Discovery, however, may yield direct evidence of Kalyango's retaliation. *See* f.n. 3 *supra*.

justice. Fed. R. Civ.R. 8(e). For these reasons, the University's Motion to Dismiss Herman's Title IX retaliation claim based upon lack of knowledge is **DENIED**. *See Adams*, 300 F. Supp. 3d at 996-97, 1000 (noting while denying Title IX teacher-on-student sexual discrimination motion to dismiss that discovery could reveal facts supporting student's claims.)

Finally, the University contends the timing of Herman's reporting Kalyango's behavior to Human Resources bars her retaliation claim. The University notes Herman's complaint to Human Resources occurred after Kalyango's alleged retaliatory acts. Thus, the University reasons, his "alleged retaliatory actions caused Ms. Herman to contact University HR, not the converse." (ECF No. 45 at 12.) In so arguing, the University overlooks Herman's allegation that after Herman contacted Human Resources and the ECRC, Kalyango reported to the ECRC that Herman had falsified evaluations. (ECF No. 15 ¶ 65.) Consequently, this contention fails to warrant dismissal as well.

Plaintiff has plead a plausible claim of Title IX retaliation against Defendants. The facts as alleged, and taken as true for purposes of this motion, support the claim that Kalyango retaliated against Herman based on her complaints of sexual discrimination against him. Hence, the University's Motion to Dismiss Herman's retaliation claim is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the University's Motion to Dismiss is **GRANTED** as to Claim Four and **DENIED** as to the remainder. (ECF No. 17.)

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**