UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Tess Herman,**

    **Plaintiff,**

    v.

**Ohio University,** *et al.***,**

    **Defendants.**

Case No. 2:19-cv-201
JUDGE SARAH D. MORRISON
Magistrate Judge Vascura

## OPINION & ORDER

In this sexual harassment and discrimination case, Defendant Yusuf Kalyango has filed a Motion for Judgment on the Pleadings (ECF No. 35) under Fed. R. Civ. P. 12(c) as to each of Plaintiff Tess Herman's twelve claims against him. A response and reply have been filed, and for the reasons that follow, the Court **DENIES** the motion in part and **GRANTS** the motion in part.

### I. BACKGROUND

In the interest of brevity, the Court incorporates the background information set forth in the Court's November 22, 2019 Opinion and Order (ECF No. 55) on Defendant Ohio University's Motion to Dismiss (ECF No. 17).

Herman's First Amended Complaint asserts a total of eighteen counts. Twelve of those are against Kalyango. Those include federal claims under 42 U.S.C. § 1983 pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for: (1) sexual harassment; (2) *quid pro quo* sexual harassment; (3) hostile environment sexual harassment; (4) retaliation; and (5) disparate treatment. (ECF No. 15.) Herman's state claims are based upon Chapter 4112 of the Ohio Revised Code and are for: (1) sexual harassment; (2) *quid pro quo* sexual harassment; (3) hostile environment; (4) retaliation; (5) gender discrimination; (6)

1

intentional infliction of emotional distress; and (7) battery. *Id*. Kalyango denies all claims. (ECF No. 18.)

## II. STANDARD OF REVIEW

The standard of review under Fed. R. Civ. P. 12(c) is the same as the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Allgeyer*, 2017 U.S. Dist. LEXIS 165072 at *9. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft*, 556 U.S. at 678).

## III. ANALYSIS

### A. § 1983 claims

Herman's federal causes of action are premised upon 42 U.S.C. § 1983 under the Fourteenth Amendment to the United States Constitution. Section 1983 provides "a private right of action against any person who, acting under the color of state law, causes another person to be

subjected to the deprivation" of a right, privilege, or immunity secured by the Constitution or laws of the United States. The Fourteenth Amendment provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause confers a constitutional right to be free from sex discrimination. *S.K. v. N. Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 812 (W.D. Pa. 2016) (citing *Hill v. Cundiff*, 797 F.3d 948, 976 (11th Cir. 2015)). "[T]his right includes the right to be free from sexual harassment perpetrated by government officials in a public school." *K.S. v. Detroit Public Schools*, 2015 U.S. Dist. LEXIS 94312, 2015 WL 4459340, *11 (E.D. Mich. July 21, 2015) (citation omitted). Thus, § 1983 provides a basis for claims for unconstitutional sex discrimination and harassment in schools. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).

Under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018). In addition, Herman sues Kalyango in his individual capacity. So she must also set forth facts that he "'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

As to the first requirement, Herman alleges Kalyango deprived her of her constitutional right to be free from sexual discrimination and sexual harassment. As to the second prong, Herman alleges Kalyango engaged in the alleged discriminatory actions "while he was a state

3

actor acting in his individual capacity under color of state law." (ECF No. 15 ¶¶ 248, 225, 236, 257, 266.) Kalyango does not argue that he is not a state actor. So, for purposes of the instant motion, the Court shall treat him as one. And, as to the third aspect, Herman alleges Kalyango carried out the conduct at issue himself.

The Court will first examine whether Herman sufficiently alleges a constitutional violation in the form of her claims for *quid pro quo* and hostile environment sexual harassment before turning to the adequacy of her disparate treatment and retaliation claims.

1. **Sexual Harassment**

Herman's sexual harassment claim takes two forms—hostile environment and *quid pro quo*. Both survive Kalyango's Motion for Judgment on the Pleadings.

   a. **Hostile Environment**

A sexual harassment claim brought under § 1983 and based upon a hostile work environment created by a supervisor involves four elements. Specifically, Herman must allege that "(1) she was a member of a protected class; (2) she was subject to unwelcomed sexual harassment; (3) the harassment was based on her sex; and (4) the harassment created a hostile work environment." *Hickman v. Laskodi*, 45 F. App'x 451, 453 (6th Cir. 2002) (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999)). These are the same elements as for a Title VII hostile environment claim. *Black v. Columbus Pub.Sch.*, 124 F. Supp. 2d 550, 576 (S.D. Ohio 2000). Additionally, "[t]he Sixth Circuit instructs that courts use the same standard when evaluating hostile work environment claims under Title VII . . . and Ohio Revised Code Chapter 4112." *Berryman v. SuperValu Holdings, Inc.*, No. 3:05cv169, 2010 U.S. Dist. LEXIS 32960, at *37-40 (S.D. Ohio Mar. 31, 2010) (citing *Noble v. Brinker Int'l, Inc.*, 391 F.3d

715, 720 (6th Cir. 2004)). Accordingly, this analysis will also apply to Herman's Chapter 4112 state law claim for hostile environment.

Kalyango implicitly concedes Herman is a member of a protected class. So, the Court turns to the second aspect of the examination: whether Herman was the subject of unwanted sexual harassment. Sexual harassment includes "'discriminatory intimidation, ridicule, and insult.'" *Barry v. O'Grady*, No. 2:14-cv-2693, 2017 U.S. Dist. LEXIS 50695, at *37-39 (S.D. Ohio Mar. 31, 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation omitted). "And despite its name, sexual harassment 'need not be overtly sexual in nature' to be actionable." *Barry*, 2017 U.S. Dist. LEXIS 50695, at *38 (*quoting Williams*, 187 F.3d at 565). Indeed, "sexual animus can be inferred from conduct not overtly sexual in nature when the context suggests it." *Ladd v. Grand Trunk W R.R., Inc.*, 552 F.3d 495, 500 (6th Cir. 2009).

The alleged sexual harassment, however, must be based on sex. *Williams*, 187 F.3d at 565. To prove that, Herman "'must show that but for the fact of her sex, she would not have been the object of harassment.'" *Farra v. GMC*, 163 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (quoting *Williams*, 187 F.3d at 565). Put another way, "harassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus against women satisfies the 'based on sex' requirement." *Williams*, 187 F.3d at 565.

If the alleged sexual harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," then a hostile work environment exists. *Barry*, 2017 U.S. Dist. LEXIS 50695 at *38 (citation and internal quotation marks omitted.) A hostile environment encompasses both an objective and a subjective element. That is, "the conduct must be severe enough to create an environment that a reasonable person

would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

When deciding whether conduct is severe or pervasive enough to constitute a hostile work environment, the Court considers, "among other factors, 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Barry*, 2017 U.S. Dist. LEXIS 50695 at *38 (quoting *Hickman*, 45 F. App'x at 454 (quoting *Bowman*, 220 F.3d at 463) (internal quotation marks omitted)). "Ultimately, whether a hostile work environment exists is a determination based on the totality of the circumstances." *Barry*, 2017 U.S. Dist. LEXIS 50695 at *39 (citations omitted). The totality of the circumstances:

> must be construed to mean that even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation. This totality-of-circumstances examination should be viewed as the most basic tenet of the hostile-work-environment cause of action.

*Williams*, 187 F.3d at 563. A final, key consideration also exists:

> when considering the viability of a sexual harassment claim, it is important to distinguish between *harassment* and *discriminatory harassment*. The Equal Protection Clause is not a general civility code. Although non-overtly sexual conduct can be considered in the hostile work environment analysis, such conduct should only be considered when the plaintiff has also alleged conduct that could evince animus toward the gender in question.

*Barry*, 2017 U.S. Dist. LEXIS 50695, at *39 (emphasis added).

Kalyango argues that his alleged conduct was not "overtly sexual, based on gender" or "severe or pervasive enough to rise to the level of a hostile or abusive environment." (ECF No. 35 at 13.) Describing his actions as "isolated and/or sporadic," Kalyango contends Herman fails

6

to assert he created working conditions for her that were so "intolerable that she felt compelled to resign." *Id*. In response, Herman reiterates Kalyango sent her numerous unwanted texts and emails of a romantic nature between when they met in February 2017 and the end of her YALI employment in July 2017. She repeats that Kalyango attempted to get her to share a hotel room with him in a foreign county while on a YALI trip.

Kalyango's frequent texts complimented Herman's physical looks and asked her to join him for dinner, sometimes late at night. One text contained a winking emoji, and another ended with "sweet dreams." The texts continued even after Herman asked him to stop contacting her about non-work matters after 9 p.m. Those communications pre-dated Kalyango's paying for a substantial portion of the Rwanda trip and attempting to get Herman to share a hotel room with him there. He also forcefully grabbed her arm in an attempt to get her to dance with him while at a club at night. Taken together, these allegations are sufficient to sustain the unwelcomed harassment aspect of the analysis. Moreover, all of that happened while Kalyango was Herman's supervisor and a professor within the journalism college where she was attempting to secure a graduate degree. Thus, a power imbalance existed.

Having found that Kalyango's actions could equate to unwelcome sexual advances, the issue of whether that harassment was based on sex must be examined. In this regard, Kalyango's actions occurred against a backdrop of "common knowledge" within the journalism school that Kalyango "used his power [and] authority . . . to seek out inappropriate personal, romantic, and possibly sexual relationships with female graduate students" while male graduate students did not receive such overtures from Kalyango. (ECF No. 15 ¶ 103.) "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Bowman*, 220
7

F.3d at 463-64 (citation omitted). She therefore sufficiently alleges Kalyango's advances were based on her sex. *See Heimberger v. Pritzker*, No. 2:12-CV-01064, 2014 U.S. Dist. LEXIS 34504, at *37 (S.D. Ohio Mar. 17, 2014) (denying motion to dismiss sexual harassment *quid pro quo* claim when female plaintiff alleged unwanted advances were based on her sex.)

The totality of the circumstances alleged in the First Amended Complaint reveal an objectively and subjectively hostile environment at this stage of the case. A reasonable person could find Kalyango's collective conduct severe enough to create hostile environment. In addition, Herman subjectively viewed the environment as hostile because after Kalyango's actions, she quit the journalism masters program and she considered leaving the University. Kalyango's Motion for Judgment on the Pleadings as to Herman's § 1983 and Chapter 4112 sexual harassment hostile environment claims (Counts Nine and Fourteen) is **DENIED**.

### b. *Quid Pro Quo*

To survive a motion to dismiss in a § 1983 action alleging *quid pro quo* sexual harassment against an individual as a violation of the Equal Protection Clause, Herman must assert that:

> (1) she was a member of a protected class; (2) she was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment was based on sex; (4) her submission to the unwelcomed advances was an express or implied condition for receiving job (education) benefits, or her refusal to submit to a supervisor's sexual demands resulted in a tangible job (educational) detriment . . . .[1]

---

[1] Herman sues Kalyango in his individual capacity. Therefore, the Court omits from discussion the final *Klemenic* requirement—the existence of respondeat superior liability. *Klemencic*, 10 F. Supp. 2d at 921.

*Klemencic*, 10 F. Supp. 2d at 921 (citing *Kauffman v. Allied Signal Inc.*, 970 F.2d 178, 186 (6th Cir. 1992)). Kalyango concedes Herman is a member of a protected class via her female gender. The Court holds above that the First Amended Complaint sufficiently pleads the second and third elements. Thus, the Court focuses on Kalyango's contention that Herman's declining his unwanted advances did not result in a tangible job or educational detriment for her. (ECF No. 35 at 11.)

After Herman declined Kalyango's invitation to dance with him and share a hotel room with him in Rwanda, Herman asserts Kalyango began treating her in a negative and retaliatory manner. That treatment, Herman alleges, resulted in her job at YALI ending and in her decision to withdraw from the journalism masters' program. Those are both tangible job and educational detriments. Consequently, the Court determines that Herman sufficiently alleges § 1983 and Chapter 4112 sexual harassment *quid pro quo* claims (Counts Eight and Thirteen). Kalyango's Motion for Judgment on the Pleadings as those counts is **DENIED**.

### 2. Disparate Treatment

Herman asserts that Kalyango treated her in a disparate manner based upon her sex. Kalyango responds that granting his motion is proper on this count because the First Amended Complaint does not sufficiently identify similarly situated individuals. (ECF No. 52 at 3-4.) The Court finds that the First Amended Complaint contains sufficient factual matter to avoid dismissal at this juncture.

To bring a successful § 1983 claim under the Fourteenth Amendment's Equal Protection Clause, Herman must allege the same elements as are required to establish a disparate treatment claim under Title VII. *Black*, 124 F. Supp. 2d at 576; *see also Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 917-18 (6th Cir. 2014) (same). Additionally, "disparate treatment

discrimination claims brought under Ohio law are governed by the same standards as Title VII claims." *Younger v. Ingersoll-Rand Co.*, No. 1:10-cv-849, 2013 U.S. Dist. LEXIS 141292, at *36-37 (S.D. Ohio Sep. 30, 2013) (citation omitted); *see also Bertram v. Medina Cty.*, No. 1:07-cv-02460, 2008 U.S. Dist. LEXIS 29157, at *11 (N.D. Ohio Apr. 9, 2008) (noting Title VII and Chapter 4112 analysis is the same for disparate impact claims). As a result, for both her federal and state claims, Herman must allege that: (1) she is a member of protected class; (2) she was qualified for the job; (3) an adverse employment action was taken against her, and (4) she was treated differently than similarly situated non-protected employees. *Black*, 124 F. Supp. 2d 565.

Kalyango concedes Herman, as a female, is a member of a protected class. He does not challenge her qualifications, or that she suffered an adverse employment action. Rather, he focuses his argument solely on the similarly situated prong. (ECF No. 35 at 9-10.) In particular, he argues Herman fails to identify any individuals whom Kalyango treated better than her. *Id*; *see also* ECF No. 52 at 4. But she does. The First Amended Complaint indicates Aaron Atkins and Franklin Charles, two male journalism graduate students that also participated in Kalyango's programs, did not face the sexual quid pro quo she and other female journalism graduates endured in Kalyango's programs endured. (ECF No. 50; ECF No. 15 ¶ 78). As a result, the Court concludes Herman's First Amended Complaint asserts sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face" for disparate treatment under § 1983 and Chapter 4112. Kalyango's Motion for Judgment on the Pleadings (ECF No. 35) as to counts seven, eleven and sixteen is **DENIED**.

### 3. Retaliation

Kalyango contends Herman cannot assert a retaliation claim under the Fourteenth Amendment's Equal Process Clause as a matter of law. He is correct. The Sixth Circuit held "[a]

'retaliation claim does not . . . arise under the Equal Protection Clause.'" *Barry*, 2017 U.S. Dist. LEXIS 50695, at \*58-59 (quoting *Smith v. City of Inkster*, 644 F. App'x 602, 611 (6th Cir. 2016)); *see also Collins v. Allen*, No. 1:04-cv-572, 2006 WL 2505928, at \*2 (S.D. Ohio Aug. 29, 2006) ("[Plaintiff's] claim against [the defendant] is for retaliation, for which the equal protection clause does not provide a remedy."). As such, the Court **GRANTS** Kalyango's Motion for Judgment on the Pleadings for Herman's Fourteenth Amendment Equal Protection Clause retaliation claim (Count Ten).

Herman's state retaliation claim is grounded in R.C. § 4112.02(I) which makes it an unlawful discriminatory practice for "any person to discriminate in any manner against another person because that person has opposed any unlawful discriminatory practice defined in this section." In particular, Herman alleges that after she lodged her ECRC complaint, Kalyango falsely accused her of changing her performance evaluations while also negatively altering Herman's evaluations himself. (ECF No. 15 ¶ 310; ECF No. 50 at 18-19.) Kalyango says this claim should be dismissed because Herman did not engage in a protected activity, and she did not suffer harassment or termination as a result of any complaint. (ECF No. 35 at 17-18.) On these points, Kalyango is mistaken.

The *prima facie* elements for retaliation under R.C. 4112.02(I) require a plaintiff to demonstrate that: (1) she engaged in a protected activity; (2) the defendants were aware she engaged in the activity; (3) the defendants took an adverse action against her; and (4) a causal link exists between the protected activity and the adverse action. *Reid v. Plainsboro Partners, III*, 10th Dist. No. 09AP-442, 2010-Ohio-4373, ¶ 56 (Sept. 16, 2010) (citing *Woods v. Capital Univ.*, 10th Dist. No. 09AP-166, 2009-Ohio-5672, ¶ 45 (Oct. 27, 2009)).

In the instant matter, Herman alleges that she reported Kalyango's sexual harassment of and discrimination against her to the ECRC. This satisfies the first element. Herman also asserts Kalyango knew about her ECRC complaint. This satisfies the second element. Herman next alleges Kalyango falsified her evaluations and also incorrectly accused her of altering assessments about her after she lodged the ECRC complaint. This satisfies the third element. Fourth, and finally, Herman claims Kalyango did so because she reported him to the ECRC. This satisfies the final element.

Because Herman has satisfied her initial burden, and because similar allegations have been deemed sufficient to avert dismissal, the Court concludes that Herman has shown "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *See Littlejohn v. Montgomery Cty. Treasurer*, No. 3:16-cv-00350, 2017 U.S. Dist. LEXIS 103203, at *5-6 (S.D. Ohio July 5, 2017); *Twombly*, 550 U.S. at 570. Kalyango's Motion for Judgment on the Pleadings for Herman's R.C. 4112 retaliation claim (Count Fifteen) is therefore **DENIED**.

### B. State Claims

#### 1. Sexual Discrimination under R.C. 4112.02(A)

Kalyango asserts Herman's R.C. § 4112.02(A)[2] discrimination claims against him in his individual capacity must be dismissed because Kalyango is not an "employer" within the meaning of Chapter 4112. (ECF No. 35 at 15-16.) Herman counters she is not proceeding under that section; instead, she notes that she is pursuing Kalyango in his individual capacity under

---

[2] This section prohibits any employer from discriminating against any person on the basis of their sex.

R.C. § § 4112.02(I)[3] and 4112.02(J)[4]. (ECF No. 50 17-18.) Consequently, the Court holds Kalyango's Motion for Judgment on the Pleadings (ECF No. 35) as to Herman's R.C. 4112.02(A) "claim" (Count Twelve) is **DENIED**.

### 2. Intentional Infliction of Emotional Distress

The First Amended Complaint asserts that Kalyango, through his collective actions discussed above, intentionally inflicted emotional distress upon Herman. (ECF No. 15 ¶ ¶ 321-329.) Kalyango argues that the allegations contained within that pleading fail to satisfy the requisite level of "extreme and outrageous" behavior such that dismissal of this claim is necessary. (ECF No. 35 at 18-19.) Herman counters that Kalyango's characterization of this claim fails to account for his falsifying her performance evaluations, so his behavior does qualify as "extreme and outrageous." (ECF No. 50 at 19-20.) Kalyango's contentions prevail.

To succeed on her claim for intentional infliction of emotional distress, Herman must sufficiently allege the following four elements: (1) the defendant intended to cause emotional distress or knew or should have known that actions taken would result in severe emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all bounds of decency, and was such as to be considered utterly intolerable in a civilized community; (3) the defendant's actions proximately caused plaintiff psychic suffering; and (4) the plaintiff suffered serious mental anguish of a nature that no reasonable man could be expected to endure. *Aycox v. Columbus Bd. of Educ.*, 10th Dist. No. 03AP-1285, 2005-Ohio-69, ¶ 27. According to the Supreme Court of Ohio:

---

[3] This section prohibits any person from discriminating or retaliating against someone who has opposed any unlawful discriminatory practice set forth in Chapter 4112.

[4] This section prohibits any person from attempting to commit any discriminatory practice included in Chapter 4112.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Yeager v. Local Union 20, Teamsters*, 6 Ohio St. 3d 369, 374-75 (1983) (internal quotations omitted) (quoting Restatement (Second) of Torts § 46 cmt. D (1965)).

Whether a plaintiff sustains this exacting standard "is to be judged by the objective standards of the community, not by a particular plaintiff's subjective sensibilities." *Black*, 124 F. Supp. 2d at 587 (citations omitted). "A plaintiff must demonstrate emotional injury which is both severe and debilitating." *Id*. (citation omitted).

In sum, Herman alleges that Kalyango: (1) sent her unwelcome text and emails with a sexual undertone; (2) pressured her to share a hotel room with him in a foreign county; (3) injured her shoulder while trying to get her to dance with him; and (4) falsified her performance reviews. Although highly inappropriate, those actions, whether individually or together, simply are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," as required under Ohio law. In addition, while it is true that sexual harassment may

constitute intentional infliction of emotional distress where the alleged harasser occupies a position of power over the victim, the resultant emotional distress must be both "severe and debilitating." *Zimmer v. Ashland Univ*., Case No. 1:00CV0630, 2001 U.S. Dist. LEXIS 15075, at *35 (N.D. Ohio Sep. 5, 2001) (citation omitted.) Herman does not assert that she suffered from that level of distress as a result of Kalyango's actions.

For these reasons, Kalyango's Motion for Judgment on the Pleadings for Herman's intentional infliction claim (Count 17) is **GRANTED**.

### 3. Battery

Herman alleges that she and Kalyango went to the Blue Room Club while they were in Africa. There, Herman claims Kalyango "forcefully grabbed her hands and attempted to force her to dance with him, causing physical pain and harm to . . . Herman's right shoulder." (ECF No. 15 ¶ ¶ 38, 330-334.) These allegations form the basis for Herman's battery claim that Kalyango now moves to dismiss on statute of limitations grounds.

"Battery is an intentional contact with another that is harmful or offensive." *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 12 (Sept. 30, 2013) (citations omitted.) "'A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results.'" *Id*. (quoting *Love v. Port Clinton*, 37 Ohio St.3d 98, 99 (1988) (citing Restatement of Law 2d, Torts, Section 13, at 25 (1965)).

The statute of limitations for assault and battery is one year. *Zhelezny*, 2013-Ohio-4337, ¶ 14 (citing R.C. 2305.111). Upon review of the First Amended Complaint, the underlying incident occurred in June 2017. Herman filed her original Complaint on January 20, 2019. Thus, Herman argues the Court should instead apply the two-year statute of limitations found in R.C. 2305.10 for personal injury claims. (ECF No. 50 at 20.)

15

"Where the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence. To hold otherwise would defeat the assault and battery statute of limitations." *Love*, 37 Ohio St. 3d at 99. The First Amended Complaint asserts that Kalyango "intentionally" and "forcefully grabbed" Herman's hands (ECF No. 15 ¶ ¶ 38, 331.) From this, there can be no doubt that Herman is alleging intentional touching; accordingly, R.C. 2305.111's one-year limitation period applies. Because Herman initiated this action more than one year after June 2017, the Court **GRANTS** Kalyango's Motion for Judgment on the Pleadings as to Herman's battery claim (Count 18).

## IV.    CONCLUSION

The Court **GRANTS** Kalyango's Motion for Judgment on the Pleadings (ECF No. 35) as to Herman's claims for Equal Protection Clause retaliation, intentional infliction of emotional distress and battery.

The Court holds that Kalyango's Motion for Judgment on the Pleadings (ECF No. 35) regarding R.C. 4112.02(A) sexual harassment is **DENIED**.

The Court **DENIES** the remainder of Kalyango's Motion for Judgment on the Pleadings (ECF No. 35) such that Herman's claims for Title VII and Chapter 4112 hostile environment (Counts 9, 14), *quid pro quo* and disparate treatment (Counts 8, 13, 11, 16), as well as her Chapter 4112 retaliation claim (Count 15), remain pending.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**