UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tess Herman,

    Plaintiff,

v.

Ohio University, *et al.*,

    Defendants.

Case No. 2:19-cv-201
JUDGE SARAH D. MORRISON
Magistrate Judge Vascura

## OPINION & ORDER

The Court considers this matter pursuant to a Motion to Dismiss filed by Third-Party Defendants M. Duane Nellis, Chaden Djalali, G. Antonio Anaya and Sara Trower ("Individual Defendants") (ECF No. 33) pursuant to Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6) as to Defendant/Third-Party Plaintiff Yusuf Kalyango's Third Party Complaint against them.[1] Being fully advised, the Court **GRANTS** the motion.

### I. BACKGROUND

In adjudicating this Motion to Dismiss, the Court accepts as true all well-pleaded factual allegations from the First Amended Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-9 (2009).

Ohio University ("University") is a public educational institution receiving federal funding. Nellis is the University's President. Djalali is the University's Provost. Anaya is the

---

[1] Kalyango's relevant pleading is styled as an Amended Cross-Claim. As the Individual Defendants correctly point out, however, none of them were named as parties in Plaintiff Tess Herman's Original or First Amended Complaint. Technically, then, Kalyango's pleading is improper under Fed. R. Civ. P. 13. The Individual Defendants have agreed to proceed as if the cross-claims were both properly lodged pursuant to Fed. R. Civ. P. 14 and properly served under Fed. Rs. Civ. P. 4 and 5. The Court will therefore do the same.

1

University's Civil Rights Investigator. At all relevant times, Trower was the University's Executive Director and Title IX coordinator.

At all relevant times, Defendant Dr. Yusuf Kalyango was the University's Director of the International Institute of Journalism ("IIJ"). In that role, Dr. Kalyango was in charge of the Young African Leaders Initiative ("YALI") and the Study of the United States Institute ("SUSI"). At all pertinent times, Plaintiff Tess Herman was a graduate student at the University working towards her Master of Science in Journalism and her Master of Science of Environmental Studies. She also worked as Kalyango's YALI program assistant.

Herman's First Amended Complaint asserts sexual harassment, sexual discrimination and retaliation claims against Kalyango based upon e-mails, text messages and events that transpired before, during and immediately after the two went to Africa for a YALI trip. Ultimately, Herman lodged a formal complaint about Kalyango's conduct towards her with the University's Office of Equity and Civil Rights Compliance ("ECRC") in July 2017. Anaya investigated her complaint ("Investigation") and produced an August 24, 2018 Memorandum of Findings ("Memorandum"). The Memorandum concluded that Herman's allegations against Kalyango for sexual harassment and hostile work environment were substantiated. (First Am. Cmplt. Ex. A.)[2] The Memorandum was submitted to the University's Chair of the Journalism Department and the Dean of the

---

[2] The Court "may consider exhibits attached to the complaint, public records, [and] items appearing in the record of the case . . . so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015)). The Memorandum is attached to the First Amended Complaint, so the Court does not convert the motion to one for summary judgment.

College of Communication "for consideration of possible disciplinary action . . . ." *Id.* at Ex. A p. 35.

Djalali reviewed the Memorandum and then initiated the University Professional Ethics Committee ("UPEC") process. The University denied Kalyango's request that members of the committee consist of "diverse professors." (ECF No. 19 ¶ 55.) The UPEC confirmed that the Memorandum was an appropriate basis for the University's journalism school to commence de-tenuring and termination proceedings. Djalali supported that conclusion and forwarded the UPEC's report to the University's journalism school for additional consideration. Kalyango appealed Djalali's decision to Nellis.

Presently, Kalyango is suspended from teaching with pay. The de-tenuring process is not complete.

Third-Party Counts Two through Seven assert that the Individual Defendants and the two Doe Defendants—one University human resources employee and one University employee whom advised students relating to securing communications—violated his due process rights. The Individual Defendants now move to dismiss each of those claims under Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6).

## II. STANDARD OF REVIEW

Before a court may determine whether a plaintiff has failed to state a claim upon which relief may be granted, it must first decide whether it has subject matter jurisdiction. *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 666-67 (S.D. Ohio 2019) (citation omitted). Rule 12(b)(1) provides that the defendant may file a motion to dismiss based on a "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial

or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County*, 847 F.3d 812, 816-17 (6th Cir. 2017). Only the former is at issue here. A facial attack "questions merely the sufficiency of the pleading." *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)), and requires the district court to "take[] the allegations in the complaint as true." *Id*. The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

A claim survives a motion to dismiss pursuant to Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted).

A court must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 557. Thus, "something beyond the mere

4

possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 557–58 (internal citations omitted).

## III. ANALYSIS

The Individual Defendants argue counts two through seven are subject to dismissal because there is no direct right of action under the Constitution for a due process violation. (ECF No. 33 at 4.) Kalyango's opposition only addresses Counts Two and Three against Trower and Anaya, while leaving Counts Four though Seven against Nellis, Djali and the Doe Defendants unaddressed. The Court reviews the claims out of order for ease of analysis.

### A. Counts Four Through Seven

These counts apply to Djalali, Nellis and the Doe Defendants. Specifically, Kalyango alleges that those defendants violated Kalyango's due process rights during the de-tenuring process. The Defendants at issue argue that dismissal of these claims is proper due to insufficient pleading. Alternatively, they contend dismissal is required due to ripeness concerns. Kalyango does not address the Individual Defendants' arguments as to pleading, but he does oppose dismissal on ripeness grounds.

Counts Four Through Seven allege only that the Defendants at issue violated the due process clause. Those claims do not mention § 1983. There is no direct right of action under the Constitution. Instead, §1983 is the "exclusive remedy for constitutional violations." (ECF No. 33 at 4) (quoting *Foster v. Michigan*, 573 Fed. Appx. 377, 391 (6th Cir. 2014) ("To the extent that Appellants attempt to assert direct constitutional claims, they fail; we have long held that § 1983 provides the exclusive remedy for constitutional violations.")). Kalyango does not attempt to

5

defend these counts. For these reasons, the Court **DISMISSES** Counts Four through Seven as a matter of law under Fed. R. Civ. P. 12(b)(6).

Assuming, *arguendo*, that Kalyango did properly plead § 1983 as the vehicle for these counts, the Individual Defendants argue dismissal is still proper because those claims are not ripe because the de-tenuring process is not complete. Kalyango states that his due process claims as to the de-tenuring procedure are ripe for two reasons. First, because "without the intervention of this Court Dr. Kalyango will certainly lose his tenure position with Ohio University" such that he "seeks injunctive relief to curtail the defendants' ongoing due process violations." (ECF No. 39.) Second, he alleges the de-tenuring process has already caused him damage in the form of the lost IIJ directorship salary and grants. (ECF No. 19 ¶ ¶ 61-64.)

Kalyango seeks monetary and injunctive relief for these claims. As to the later, he seeks an order "enjoining [the University] from any further proceedings under the current de-tenuring protocol, reinstating [him] to his full-time duties as a tenured professor; and enjoining Ohio University, its representatives, officers, agents and employees from retaliating in any form or fashion against [him] for having filed a charge of discrimination, filing this lawsuit or for having pursued his full remedies." (ECF No. 19 at Wherefore ¶ 2.)

Ripeness is a threshold question. "The ripeness doctrine serves to avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract debates that may turn out differently in different settings." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quotation omitted). It is a "question of timing" that "becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *NRA of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). A claim is not ripe for judicial review when "there is no certainty whether the challenged conduct will occur in the future." *Warshak*,

532 F.3d at 526 (quotation omitted). In addition, a constitutional claim is not "fit" for judicial consideration when it presents "difficult legal questions before they arise and before the courts know how they will arise." *Id.* In contrast:

> [a] claim is ripe where (1) 'there is a likelihood that the harm alleged by the plaintiff will come to pass; (2) the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) hardship to the parties exists if judicial relief is denied at this stage in the proceedings.

*Morreim v. Univ. of Tenn.*, No. 12-2891-STA-dkv, 2013 U.S. Dist. LEXIS 149436, at *33-36 (W.D. Tenn. Oct. 16, 2013) (quoting *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012)).

With those principles in mind, the Court determines that Kalyango's § 1983 tenure due process claims are not ripe. He admits that the de-tenuring process has begun, but is not yet completed. Kalyango further acknowledges that he remains a tenured professor receiving his full salary, albeit under suspension of his teaching duties. In effect, he seeks relief from an outcome yet to occur—he may be de-tenured. And, he does so while presenting "difficult legal questions" about whether the de-tenuring process will violate the Due Process and Equal Protection Clauses; such questions typically involve "a fact intensive and searching legal analysis." *Morreim*, No. 12-2891-STA-dkv, 2013 U.S. Dist. LEXIS 149436, at *37 (W.D. Tenn. Oct. 16, 2013).

Accordingly, the Court **GRANTS** the Individual Defendants' Motion to Dismiss Counts Four through Seven under Fed. R. Civ. P. 12(b)(1). This dismissal is without prejudice.

### B. Counts Two and Three

Counts Two and Three assert Trower and Anaya violated the Due Process Clause while acting under color of law during the Investigation pursuant to 42 U.S.C. § 1983. (ECF No. 19 ¶¶ 85-101.) Trower and Anaya admit that §1983 is the "exclusive remedy for constitutional

violations." (ECF No. 33 at 4) (quoting *Foster v. Michigan*, 573 Fed. Appx. 377, 391 (6th Cir. 2014) ("To the extent that Appellants attempt to assert direct constitutional claims, they fail; we have long held that § 1983 provides the exclusive remedy for constitutional violations.")). Hence, Kalyango, by incorporating § 1983 into these counts, avoids dismissal of Counts Two and Three on this ground. This portion of the Motion to Dismiss is **DENIED**.

The Court now proceeds to a substantive review of the remaining claims. In Count Two, Kalyango alleges Trower violated his due process rights by telling Herman to resign from YALI "for purposes of setting up a false title IX claim" against him. (ECF No. 19 ¶ 87.) In Count Three, Kalyango asserts Anaya violated Kalyango's due process rights by taking too long to complete the Memorandum and by failing to take notes during his investigation. (ECF No. 19 ¶ ¶ 96-98.) Trower and Anaya urge the Court to dismiss these claims on Eleventh Amendment immunity and qualified immunity grounds. (ECF No. 33 at 5.) Kalyango responds that the claims, which are brought against Trower and Anaya in their personal and official capacities, are not subject to dismissal based on immunity at this early stage. (ECF No. 39 at 12.) After due consideration, the Court finds Trower's and Anaya's arguments are persuasive.

### 1. Official Capacity – Eleventh Amendment

The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State." U.S. Const. amend. XI. As to the scope of Eleventh Amendment, the Sixth Circuit directs:

> This immunity is far reaching. It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens. The amendment also bars suits for monetary relief against state officials sued in their official capacity.

8

*Thiokol Corp. v. Dep't of Treas.*, 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted). the Eleventh Amendment further "bars federal jurisdiction over suits against state officials when the relief sought is retrospective or compensatory in nature . . . ." *MacDonald v. Vill. of Northport*, 164 F.3d 964, 971 (6th Cir. 1999).

Ohio University is a public educational institution located in Ohio. It therefore qualifies as an arm of the state. *Phi Kappa Tau Chptr. House Ass'n of Miami Univ. v. Miami Univ*., No. 1:12-cv-657, 2013 U.S. Dist. LEXIS 15030, at *12 (S.D. Ohio Feb. 4, 2013). Accordingly, to the extent Kalyango sues Trower and Anaya in their official capacities for money damages or retroactive relief, those claims are barred. This is so because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Consequently, the Court **DISMISSES** Kalyango's official capacity § 1983 due process claims against Trower and Anaya without prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

But, state officials may still be sued for injunctive relief because "'official capacity' actions for prospective relief are not treated as actions against the State." *Id*. at 71 n.10. Hence, "the amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." *Id*. (quoting *Ex Parte Young*, 209 U.S. 123 (1908)). It is upon that exception that Kalyango argues his official capacity § 1983 due process claims against Trower and Anaya may proceed.

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint

9

alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur D'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). Prospective relief "merely compels the state officers' compliance with federal law in the future." *Doe v. Wigginton*, 21 F.3d 733, 737 (6th Cir. 1994).

From this, Trower and Anaya assert *Ex Parte Young* is inapplicable because Kalyango's allegations target their past conduct. (ECF No. 33 at 8.) They frame the relevant conduct as occurring within the investigation of Herman's ECRC complaint, which completed in August 2018. *Id*. In contrast, Kalyango responds that he seeks prospective injunctive relief enjoining Trower and Anaya from violating his due process rights through the continuation of the de-tenuring process. (ECF No. 39 at 5.)

The problem with Kalyango's argument is that his First Amended Cross-Claim does not allege or proffer any factual predicate showing that Trower and Anaya had or have any role in the de-tenuring process. For certain, Counts Two and Three only refer to the Investigation, not to the de-tenuring process. Within this framework, then, it becomes clear that Kalyango's efforts to seek injunctive relief from Trower and Anaya in their official capacities is based upon their completed conduct. Hence, the Court **GRANTS** the Motion to Dismiss of Trower and Anaya in their official capacities as to Counts Two and Three under Fed. R. Civ. P. 12(B)(6).

### 2. Individual Liability – Qualified Immunity

Due to the above analysis, only Counts Two and Three against Trower and Anaya in their individual capacities remain at issue. Trower and Anaya allege that they are entitled to qualified

immunity as to those counts. Kalyango counters immunity issues are not properly considered at the motion to dismiss stage. The Court determines that immunity applies in this instance.

To state a § 1983 claim, Kalyango must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived plaintiff of this federal right under the color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61. In the case *sub judice*, Kalyango asserts Trower and Anaya deprived him of his right to due process while acting under color of law.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In so doing, "qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, it is important to resolve immunity issues "at the earliest possible stage in litigation." *Id.* 232.

To determine whether a defendant is entitled to qualified immunity, the Court asks two questions: "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* 231 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). It does not matter which query is addressed first; for immunity to attach, both must be satisfied. *Pearson*, 555 U.S. at 236; see also *Doe v. Miami Univ.*, 882 F.3d 579, 2018 WL 797451, at *17 (6th Cir. 2018) (internal citations omitted). When a defendant raises qualified immunity as a

defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to that defense. *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006).

### i. Trower

Within the context of his § 1983 Due Process Investigation counts, Kalyango alleges Trower, or someone under her direction, told Herman to resign from YALI "for the purpose of setting up a false title IX claim" against him. (ECF No. 19 ¶ 88.) He asserts that by so doing, Trower "failed to abide by University Guidelines, regulations, the Faculty Handbook in effect at the time and well-established Ohio and federal law with regard to her advice and directive to plaintiff." *Id*. ¶ 90. He continues by asserting that as a "result of that unlawful, negligent and misleading directive," Herman resigned and filed her ECRC complaint which yielded "financial loss, destruction of reputation and irreparable damage" to him via the Memorandum. *Id*. ¶ 91. Lastly, he claims that Trower supervised the investigation, and did not provide him with "an opportunity to directly question the plaintiff or to have her cross-examined. . . ." *Id*. ¶ 35.)

To begin, there is no procedural due process claim arising from Trower's assumed failure to adhere to University policies and guidelines. *See Anderson v. Ohio State University*, 26 Fed. Appx. 412, 414 (6th Cir. 2001) (citing *Purisch v. Tenn. Tech. Univ*., 76 F.3d 1414, 1423 (6th Cir. 1996) ("Violation of a state's formal procedure, however, does not in and of itself implicate constitutional due process concerns."). Next, Kalyango neither alleges nor asserts facts sufficient to find that his "negligent advice" count involves a clearly defined constitutional right. Instead, Kalyango alleges that "as a result of the improper, negligent advice" Herman filed the ECRC complaint. (ECF No. 19 ¶¶ 90-91.) But causation is not at issue in a due process analysis; instead, the relevant query is whether the alleged deprivation occurred without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983 (1990).

12

Trower also properly argues that Kalyango's claimed right to to cross-examine Herman during the sexual harassment investigation is not clearly established. (ECF No. 47 at 9.) To be found "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 604-06 (S.D. Ohio 2016) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). When considering whether a right is clearly established, "a district court must look to then-existing binding precedent from the Supreme Court, the Sixth Circuit or itself." *Klemencic v. Ohio State Univ.*, 111 F.3d 131 (6th Cir. 1997). The determination of whether a right is clearly established must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Wilson v. Columbus Bd. of Educ.*, 589 F. Supp. 2d 952, 964 (S.D. Ohio 2008) (quotation omitted).

Kalyango offers no authority establishing that the ability to cross-examine accusers in the context of an university's sexual harassment investigation regarding a professor's conduct toward a student is a "clearly established right." Nor could the Court locate any. And, turning to the specific context of this case, the Memorandum served only to make recommendations, not to effect discipline itself. In this regard, Kalyango does not assert that he lacked notice of the investigation, or that he was not permitted to provide a statement. Under these circumstances, the Court concludes that Kalyango has failed to allege facts sufficient to show his interest in cross-examining Herman during the investigation was a "clearly established right" such that dismissal of this count on qualified immunity grounds under Fed. R. Civ. P. 12(b)(6) is proper.

Finding that Kalyango fails to allege the existence of a clearly established constitutional right, the Court **GRANTS** Trower's Motion to Dismiss (ECF No. 33) Count Two against her in her individual capacity based upon qualified immunity.

### ii. Anaya

Kalyango defines his § 1983 Due Process Investigation claim against Anaya to include Anaya's "blatantly violat[ing] the University's regulations, guidelines, [and] faculty handbook" by failing to keep contemporaneous notes and by failing to complete the Investigation in a timely manner. (ECF No. 19 at ¶¶ 96-98.) As a result, Kalyango claims "numerous false and injurious leaks of information to the press" happened that caused him financial and reputational damage. *Id*. ¶ 101. He further contends Anaya was biased against him. *Id*. ¶¶ 99-101.

Kalyango fails to sufficiently allege facts showing the existence of a clearly defined constitutional right through any of Anaya's highlighted inactions or actions. The Court holds above that a University's failure to follow its own rules, guidelines or procedures does not create due process concerns. *See Purisch*, 76 F.3d at 1423. Kalyango's timeliness contention is premised upon those same publications and is therefore also unpersuasive.

Turning to his allegations that Anaya's investigatory notes were inadequate, "'[t]he Due Process Clause does not require a particular kind of investigation . . . .'" nor does it dictate a certain level of thoroughness. *Doe v. Ohio State Univ*., 219 F. Supp. 3d 645, 657 (S.D. Ohio 2016) (quoting *Nguyen v. Univ. of Louisville*, No. CIV.A. 3:04-CV-457-H, 2006 U.S. Dist. LEXIS 20082, 2006 WL 1005152, at *4 (W.D. Ky. Apr. 14, 2006)). Thus, this portion of Kalyango's claim against Anaya fails.

Kalyango's final assertion is that he has a clearly defined constitutional right to an investigation free from bias. "The procedural-due-process analysis focuses on the decision-maker, not the investigator." *See Kolley v. Adult Protective Servs*., 725 F.3d 581, 586-87 (6th Cir. 2013) (dismissing procedural-due-process claims against social workers and investigators because it was the juvenile court's duty, and not the investigators" duty, to provide notice and a

14

hearing). In this regard, "[d]ue process provides, not a guarantee of a perfect investigation, but notice and an opportunity to be heard by a neutral decisionmaker." *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 657 (S.D. Ohio 2016).

To reiterate, the First Amended Cross-Claim asserts Anaya conducted the Investigation and issued the Memorandum that made recommendations as to next steps for Kalyango; Anaya did not make any decisions as a result of the Memorandum. Kalyango therefore fails to allege facts sufficient to attach the "decisionmaker" moniker to Anaya. For certain, Kalyango describes Anaya as the "biased investigator." (ECF No. 19 ¶ 42.) Hence, "any claims of bias in the investigation don't implicate these due process concerns." *Doe*, 219 F. Supp. 3d at 657. Moreover, Kalyango does not assert that he failed to receive notice of the Investigation or that he was barred from presenting his side of the events during the Investigation.

To summarize, because Kalyango does not allege sufficient facts showing Anaya violated a clearly established constitutional right, Anaya is entitled to qualified immunity in his individual capacity as to Count Two. Anaya's Motion to Dismiss (Doc. 33) that count under Fed. R. Civ. P. 12(B)(6) is **GRANTED**.

## IV. CONCLUSION

The Court **GRANTS** Individual Defendants' Motion to Dismiss (ECF No. 33) Kalyango's Amended Cross-Claims. Counts Two through Seven are dismissed.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE**