UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Tess Herman,**

    Plaintiff,

v.

**Ohio University,** *et al.***,**

    Defendants.

Case No. 2:19-cv-201
JUDGE SARAH D. MORRISON
Magistrate Judge Vascura

## OPINION & ORDER

Defendant/Cross-Claim Plaintiff Yusuf Kalyango ("Kalyango") asserts eight cross-claims against Defendant/Cross-Claim Defendant Ohio University ("University"). The University moves to dismiss (ECF No. 30) each count pursuant to Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6). Being fully advised, the Court **GRANTS** the motion.

For ease of analysis, the Court incorporates the factual background set forth in the Court's November 22, 2019 Opinion & Order (ECF No. 57) by reference herein.

### I.    STANDARD OF REVIEW

Before a court may determine whether a plaintiff has failed to state a claim upon which relief may be granted, it must first decide whether it has subject matter jurisdiction. *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 666-67 (S.D. Ohio 2019) (citation omitted). Rule 12(b)(1) provides that the defendant may file a motion to dismiss based on a "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County*, 847 F.3d 812, 816-17 (6th Cir. 2017). Only the former is present here. A facial attack "questions

merely the sufficiency of the pleading." *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)), and requires the district court to "take[] the allegations in the complaint as true." *Id*.

A claim survives a motion to dismiss pursuant to Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted). The Court must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 557. Thus, "something beyond the mere possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 557–58 (internal citations omitted).

## II. ANALYSIS

Kalyango asserts claims against the University for violation of the Due Process Clause (Count One); violation of the Equal Protection Clause (Count Eight); race and national origin discrimination under 42 U.S.C. § 1981 (Count Nine); race, national origin and gender discrimination under Ohio Revised Code Chapter 4112 (Count Ten); retaliation under Chapter 4112 (Count Eleven); breach of contract (Counts Twelve and Thirteen); sex discrimination under 20 U.S.C. § 1681, Title IX (Count Fourteen), and "injunctive relief" (Count Fifteen).

In summary, the University urges dismissal of the federal counts on immunity grounds, dismissal of the state counts on jurisdictional grounds and dismissal of the "injunctive" count for failure to state a claim upon which relief may be granted. (ECF No. 30.) Kalyango responds that the Eleventh Amendment does not bar the claims here because he seeks prospective relief and characterizes his Title IX count as premised upon an "erroneous outcome" theory such that dismissal should be denied. (ECF No. 39.) For analytical fluidity, the Court groups the claims into those asserting federal violations and those asserting state violations.

### A. Counts One, Eight and Nine

Count One is Kalyango's contention that the University violated his Due Process rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 with respect to the de-tenuring process and the sexual harassment investigation ("Investigation"). Regarding de-tenuring, Kalyango claims the University will provide him with "no opportunity for cross-examination, no protection against retaliation, and no meaningful process of confidentiality." (ECF No. 19 ¶ 74.)[1] As to the Investigation, Kalyango asserts the University failed to complete it in a timely and

---

[1] The Court's November 22, 2019 Opinion & Order (ECF No. 57) holds that his de-tenuring claims, excluding the retaliation portion, are not ripe. The Court examines the de-tenuring claims here, as they fail for an additional reason against the University: Eleventh Amendment Immunity.

confidential manner which resulted in him losing $35,000 in annual supplemental income. (ECF No. ¶ ¶ 72-73, 83-84.)

Count Eight asserts that the University discriminated against Kalyango on the basis of his race and gender when completing the Investigation in violation the Equal Protection Clause of the Fourteenth Amendment pursuant to § 1983.

Count Nine claims that the University intentionally discriminated against Kalyango on the basis of his race and national origin in violation of § 1981.

The University asserts the Eleventh Amendment insulates it from liability as to all three claims. (ECF No. 30.)

Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens." *Doe v. Miami Univ.*, 247 F. Supp. 3d 875, 883 (S.D. Ohio 2017) (quotation omitted). As a public university in the State of Ohio, Ohio University qualifies as an arm of the state and is immune from suit under the Eleventh Amendment. *Id.* Kalyango offers no rebuttal to this conclusion. Consequently, the Court **GRANTS** the University's Motion to Dismiss Counts One, Eight and Nine under Fed. Rs. Civ. P. 12(b)(6) and 12(b)(1).

### B. Counts Ten, Eleven, Twelve and Thirteen

In Count Ten, Kalyango asserts that the University illegally discriminated against him on the basis of his race, national origin and gender in violation of Ohio Revised Code Chapter 4112 when placing him on paid leave following the Investigation. Count Eleven alleges that the University unlawfully retaliated against Kalyango under Chapter 4112 for participating in the Investigation by charging him with "further false and frivolous allegations of wrongful conduct." (ECF No. 19 ¶ 147.) Counts Twelve and Thirteen assert breach of contract claims. The

University asserts only the Ohio Court of Claims has jurisdiction over all of these counts. Kalyango offers no opposition to this contention.

The University is correct. R.C. 2743.02(A)(1) provides: "[t]he state hereby waives its immunity from liability, . . . and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties. . . ." That section "confirms that Ohio has not consented to state law damages actions against the State of Ohio . . . outside of its own courts." *Jones v. Hamilton Cty. Sheriff*, 838 F.3d 782, 786 (6th Cir. 2016). In addition, Ohio has not waived or abrogated its Eleventh Amendment Immunity by enacting Chapter 4112. *See Dendinger v. Ohio*, 207 F. App'x 521, 529 (6th Cir. 2006); *see also Bialczak v. Ohio Dep't of Taxation*, No. 99-3841, 2000 U.S. App. LEXIS 33963, at *6-7 (6th Cir. Dec. 22, 2000) ("Ohio Revised Code § 4112.99 authorizes suit against the State of Ohio as an employer in its Court of Claims, but the statute does not waive the State's Eleventh Amendment immunity from suit in federal court."). Consequently, the Court **GRANTS** the University's Motion to Dismiss Counts Ten, Eleven, Twelve and Thirteen under Fed. R. Civ. P. 12(b)(1).

**C. Count Fourteen**

Count Fourteen, the final claim at issue, is for reverse gender discrimination under Title IX regarding the Investigation. (ECF No. 19 ¶¶ 162-175.) Particularly, Kalyango proceeds under an erroneous-outcome theory of liability, asserting that the University failed to provide him with the requisite due process and fairness protections while extending those same protections to female participants in sexual misconduct investigations. (ECF No. 39 at 13.) The University did so, he alleges, based solely upon his gender. (ECF No. 19 ¶ 167.) The University replies that this claim should be dismissed because Kalyango's First Amended Cross-Claim contains mere

conclusory allegations that are insufficient to plead an erroneous outcome count. (ECF No. 47 at 3.)

Title IX of the Education Amendments of 1972 is a federal statute designed to prevent sexual discrimination and harassment in educational institutions receiving federal funding. *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1065 (S.D. Ohio 2017). Title IX states: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). Because the University is an institution voluntarily participating in federal spending programs, it has waived its Eleventh Amendment immunity for Title IX purposes pursuant to 42 U.S.C. § 2000d-7. *Doe*, 239 F. Supp. 3d at 1065.

"An erroneous outcome claim exists when an 'innocent' person was wrongly found to have committed an offense because of his or her gender." *Id.* 1069-70. In order to state a claim pursuant to this standard, a plaintiff must plead two elements: (1) facts sufficient to cast doubts about the accuracy of the outcome of the disciplinary hearing; and (2) a causal connection between the flawed outcome and gender bias. *Doe v. Case W. Res. Univ.*, No. 1:14CV2044, 2015 U.S. Dist. LEXIS 123680, at *9 (N.D. Ohio Sep. 16, 2015) (citation omitted.) The University assumes the first aspect is met for purposes of this motion and therefore focuses its arguments on the causal connection element. (ECF No. 47 at 3.) Kalyango must thus plead sufficient facts to show that the University's actions were "'motivated by sexual bias' or that its 'disciplinary hearing process constitutes a 'pattern of decision-making' whereby the . . . disciplinary procedures governing sexual assault claims [are] 'discriminatorily applied or motivated by a

chauvinistic view of the sexes.'" *Case W. Res. Univ.*, 2015 U.S. Dist. LEXIS 123680, at *12-13 (citing *Mallory v. Ohio Univ.*, 76 F. App'x 634, 640 (6th Cir. 2003)); *see also Doe v. Miami Univ.*, 882 F.3d 579, 593 (6th Cir. 2018).

"In order to properly state a claim alleging that Defendants' actions were motivated by sexual bias, Plaintiff['s] . . . allegations must include, '. . . *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Doe*, 239 F. Supp. 3d at 1069-70. In this regard, Kalyango argues that Anaya's acknowledgement that Kalyango's attempt to share a hotel room with Herman might have been necessary while also imputing sexual motives to the request satisfies this requirement. However, this argument falls flat because it fails to "identify any specific statement(s) by" any of the Individual Defendants[2] "which evidence gender bias" in the Investigation. *See Doe*, 239 F. Supp. 3d at 1071–72. In other words, Anaya's comment does not evince gender bias simply because it can be read to recognize Kalayngo is a male. *See Doe v. Denison Univ.*, No. 2:16-cv-143, 2017 U.S. Dist. LEXIS 53168, at *14-15 (S.D. Ohio Mar. 30, 2017) (holding statement made by female investigator of student-on-student sexual assault charge to the effect that the decisionmakers had to "weigh the 'future of 1,000 girls'" when deciding female's complaint against a male "does not, however, lead to a plausible inference that [the investigator] was biased against [the alleged male assailant and plaintiff] or believed he posed a risk to other women because he was a man and Jane Doe (and other potential victims) was a woman, as opposed to because he was a student whom [investigator] believed sexually assaulted another student and would do so again should he be found not responsible.") As a

---

[2] According to the First Amended Cross-Claim, the Individual Defendants include the University's president, provost, Title IX coordinator and civil rights investigator.

result, a "[p]laintiff's subjective belief that he was the victim of discrimination—however strongly felt—is insufficient to satisfy his burden at the pleading stage." *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 371 (S.D.N.Y. 2015).

Kalyango's attempt to satisfy the alternative method of pleading sexual bias fares no better. He makes the broad allegation that in the course of sexual misconduct investigations, the University provides female participants with due process protections while withholding those same protections from male participants. Yet, his First Amended Cross-Claim provides no supporting factual basis for this contention. As such, that allegation falls short of plausibly suggesting that the University's Investigation was "motivated by sex-based bias." *Case W. Res. Univ.*, 2015 U.S. Dist. LEXIS 123680, at *15. And, "a single case by an individual who was displeased by the result of a disciplinary proceeding cannot constitute a pattern of decision-making." *Id*. *14.

In conclusion, Kalyango's First Amended Cross-Claim fails to state a claim upon which relief can be granted in Count Fourteen under Title IX's "erroneous outcome" theory because it lacks the factual allegations necessary to plausibly support that claim. The University's Motion to Dismiss Kalyango's Title IX Investigation Count is **GRANTED**.

### D. Count Fifteen

Lastly, Kalyango purports to assert a claim for injunctive relief. (ECF No. 19 ¶ ¶ 176-190.) The University correctly states that this is not a valid claim for relief. (ECF No. 30 at 11) (citing *Reyes v. Wilson Mem'l Hosp.*, 102 F. Supp. 2d 798, 801 n.1 (S.D. Ohio 1998)). Hence, the Court **GRANTS** the University's Motion to Dismiss this "claim" (Count Fifteen) under Fed. R. Civ. P. 12(b)(6).

## III. CONCLUSION

The University's Motion to Dismiss (ECF No. 30) is **GRANTED**. Counts One and Eight through Fifteen of Kalyango's First Amended Cross-Claim against the University are **DISMISSED**.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**